Matthias, J.
 

 The relator challenges the jurisdiction of the court of common pleas to hear the issue or matter with respect to the appointment of a receiver for the Columbian Building
 
 &
 
 Loan Company in the case now pending in that court. He does not seek to restrain or limit the hearing and determination of any other issue presented in that case.
 

 The jurisdiction of the court of common pleas is prescribed by statute, and it is conceded that court has authority generally in the matter of appointment of receivers, but it is contended that such power is limited by. statutes providing for the control and regulation of building and loan associations, and that the proposed action of the common pleas court, which is here challenged, is not within, but is in excess of, its authorized power and jurisdiction; and that is the sole question presented by the pleadings for our consideration and decision in this case.
 

 We are not so much concerned in the object and purpose of those who instigated or instituted the action asking the appointment of a receiver for the Columbian Building
 
 &
 
 Loan Company as we are in what seems to be not only the probable, but the necessary and certain result of that proceeding. If the allegations of the petition in that case are true, that proceeding is in fact one for the dissolution of the
 
 *274
 
 building and loan company under a receiver appointed by that court upon tbe application of a depositor. It is predicated upon the express and definite assertion of tbe.insolvency of tbe building and loan company. True, in this instance, tbe applicant claims as a depositor in a building and loan company whose assets sbe alleges are now improperly in the possession and under tbe control of another building and loan company, and sbe seeks to recover same from tbe latter company; but we regard tbe principle involved with reference to tbe issue now presented to be tbe same as though tbe plaintiff in that case were a depositor of tbe Columbian Building & Loan Company, and, as such, seeking the appointment of a receiver and a dissolution of that company.
 

 Tbe report of tbe superintendent of building and loan associations of Ohio for tbe fiscal year ending December 31, 1930, shows that seven hundred and ninety-one associations filed annual reports, a compilation of which discloses total assets of $1,246,-864,413, of which loans on mortgage security constitute $1,108,681,799. .These reports also show tbe total number of stockholders to be 1,815,005; tbe number of borrowers, 419,846; and tbe number of depositors, 1,142,017.
 

 It would be unfortunate if any single dissatisfied or offended depositor or shareholder of one of these institutions could institute extended and expensive litigation for its dissolution to tbe great detriment of tbe many identified with such association, whose interests, and incidentally those of the general public, would be thus seriously jeopardized. The success or failure of such institutions affects the stabil
 
 *275
 
 ity of business and the financial interests of the entire community, and it became necessary that they be strictly supervised and controlled for the' protection of depositors and the welfare of the public. The intimate relation of building and loan associations to the welfare of the public has heretofore been quite generally recognized, but never has it been so clearly demonstrated as it has within the past few months. Recognizing the character of such institutions, and the purpose they seek to serve, the Legislature of this state has enacted statutes governing, controlling and regulating them, and, in language that cannot be misunderstood, has wisely made provision for their supervision at all times and under all circumstances and conditions, including those disclosed by the conceded facts before us in this case. These statutes have created the office of superintendent of building and loan associations, with broad powers and duties, making provision for deputies, assistants, clerks, and examiners to assist in the performance of such duties. Specific requirement is made as to the filing of detailed reports annually of the business transacted by each of such associations and of the condition of its affairs, and also for an examination of each at least once a year by the superintendent, or an examiner designated by him.
 

 Full power of regulation, supervision and control is conferred upon the superintendent of building and loan associations by these provisions, for the evident purpose of protecting and safeguarding the interests of all who may be concerned therein. Among these provisions are the following:
 

 Section 686, General Code. “If upon examination,
 
 *276
 
 the inspector of building and loan associations finds any domestic association conducting its business in whole or part contrary to law, or failing to comply therewith, he shall notify the board of directors of such association of such fact in writing. If, after thirty days, such illegal practices or failure continues, he shall communicate the facts to the attorney general, who shall cause proceedings to be instituted in the proper court to revoke the charter of such association.”
 

 Section 687, General Code. “If, upon examination, the inspector of building and loan associations finds that the affairs of a domestic building and loan association are in an unsound condition, and that the interests of the public demand its dissolution and the winding up of its business, he shall so report to the attorney general, who shall institute the proper proceedings for that purpose.”
 

 We cannot disregard the clear and manifest purpose of the legislative branch of the government to fully protect and safeguard the interests of depositors and others in these gwm-public institutions. Confidence is essential to their stability and maintenance, and that has been encouraged and promoted by supervision and control under state authority. Insolvency of a building and loan association results necessarily in its dissolution and liquidation. This proposition is supported by uniform and undivided authority. The legislature has by statute provided the method for the dissolution of building and loan associations. At the time of the institution of the action in the common pleas court, and for many days prior thereto, the superintendent of building and loan associations of Ohio in person,
 
 *277
 
 and by and through a number of duly appointed and qualified examiners, had been making an examination of the business, property, assets and affairs of the Columbian Building
 
 &
 
 Loan Company, pursuant to the authority vested in him by law, for the purpose of determining whether or not said company was conducting its business in accordance with law, and whether its affairs were in a sound or unsound condition, and for the further purpose of ascertaining whether the interests of the public required the dissolution and liquidation of such company, and said superintendent and examiners under his direction are continuing their examination of the business, property and affairs of that company for the purposes stated.
 

 These facts aré uncontroverted, and there being no charge of failure, neglect, or delay of the superintendent of building and loan associations, or of the attorney general, in the performance of their duties prescribed by law, the presumption, of course, obtains that they have been and will continue to be diligent in the performance of all the duties, and faithful in meeting all the responsibilities of their respective offices relative to the affairs of said company.
 

 The statutes to which attention has been directed provide the specific and adequate remedy which serves to protect, conserve and secure an equitable distribution of the assets of such company to those entitled thereto. The adequacy of the remedy provided to protect and preserve the interests of all concerned argues convincingly for its exclusiveness. The application of familiar rules of statutory construction warrants the conclusion that the special
 
 *278
 
 provisions of Section 687, General Code, constitute an exception to the general statutory provisions relating to receiverships. We are of the opinion that by these provisions the legislature has provided not only an exclusive method for the supervision and control of the affairs of building and loan associations, but also an exclusive method of procedure for the dissolution of such associations and the liquidation of their assets, and has thereby limited the jurisdiction of the common pleas court.
 

 Numerous reported decisions have been cited touching the question involved in this case, but because of the difference in the provisions of the various statutes upon which they are based few of them are directly applicable. In the main those which are at all applicable fully support and sustain the conclusions above indicated.
 
 Union Savings & Investment Co.
 
 v.
 
 District Court of Salt Lake County,
 
 44 Utah, 397, 140 P., 221, 225, Ann. Cas., 1917A, 821;
 
 Koch
 
 v.
 
 Missouri-Lincoln Trust Co.,
 
 (Mo. Sup.), 181 S. W., 44;
 
 Huntington County Loan & Savings Assn.
 
 v.
 
 Fulk,
 
 158 Ind., 113, 63 N. E., 123;
 
 Farmers Deposit Bank
 
 v.
 
 State, ex rel. Symons, State Bank Commr.,
 
 201 Ind., 117, 166 N. E., 285;
 
 Cartmell
 
 v.
 
 Commercial Bank & Trust Co.,
 
 153 Ky., 798, 156 S. W., 1048;
 
 Grimes
 
 v.
 
 Central Life Ins. Co.,
 
 172 Ky., 18, 188 S. W., 901;
 
 Abbott
 
 v.
 
 Morris, Judge,
 
 101 W. Va., 127, 132 S. E., 372, 374;
 
 Ulmer
 
 v.
 
 Falmouth Loan & Building Assn.,
 
 93 Me., 302, 45 A., 32, 34;
 
 Craughwell
 
 v.
 
 Mousam River Trust Co.,
 
 113 Me., 531, 95 A., 221;
 
 State, ex rel. Meyer-Kiser Bank,
 
 v.
 
 Superior Court of Marion County,
 
 (Ind. Sup.), 177 N. E., 322;
 
 State, ex rel. Dade County Security Co.,
 
 v.
 
 Barns,
 
 99 Fla., 1258, 128 So., 860;
 
 Hill
 
 v.
 
 Webb,
 
 127 Okl.,
 
 *279
 
 249, 260 P., 450;
 
 Stone
 
 v.
 
 Schiller Bldg. & Loan Assn.,
 
 302 Pa., 544, 153 A., 758;
 
 North
 
 v.
 
 Union Sav. & Loan Assn.,
 
 59 Or., 483, 117 P., 822.
 

 The language of the court in
 
 Ulmer
 
 v.
 
 Falmouth Loan & Building Assn., supra,
 
 which is reiterated in the
 
 Craughwell case, supra,
 
 is so pertinent that it is here set forth:
 

 “The foregoing summary of statute provisions makes it apparent that the legislature has intended to throw around institutions of this character all possible safeguards for the protection, not only of those who are financially interested in them, but of the public itself; and it is made the duty of the bank examiner to see that the safeguards established by law are maintained, and that the associations conduct their business according to law. For failure in either respect he may apply to the court for the proper remedy.
 

 “The statute points out the conditions under which the intervention of the court may be obtained, and the officer by whom the machinery of litigation may be set in motion. It suggests no other way. And it is the opinion of the court that it was the intention of the legislature, as expressed in the statute, that the power of invoking the interference of the court should be vested in the bank examiner alone, and that he only may pray for an injunction and a receiver. It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. Unusual means are placed in the hands of the bank examiner to ascer
 
 *280
 
 tain their condition, and it cannot be presumed that he will fail to act in a proper case. If one shareholder may maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by the suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence.”
 

 The situation presented by the case before us is quite similar to that before the court in the
 
 Union Savings & Investment Co. case,
 
 supra, and that court, in announcing a similar conclusion, made the following statement, which is clearly applicable here:
 

 “The question we must decide is whether every dissatisfied shareholder may go into a court at any time and ask that court to wind up the affairs of a building and loan association so that he may at once, or as soon as the business affairs of the association ean be wound up, obtain the withdrawal value of his shares, and in so doing arrest and frustrate the entire scheme and purpose of the association and, as we have seen, dissolve all of the existing contractual relations between the association and its members except for the purpose of liquidation, without giving the association the opportunity contemplated by the statute to correct any evils or wrongs that may exist in managing its affairs. If this may be done, then any shareholder may jeopardize the welfare of the association and its members at any time and without adequate cause. We cannot escape the responsibility of determining the meaning of the statute, and whether if is intended to protect the rights
 
 *281
 
 of all such associations and their members rather than, without complying with the statute, to vindicate the alleged rights of a few members of but one association.”
 

 Likewise the Supreme Court of West Virginia, in the case of
 
 Abbott, Commr. of Banking,
 
 v.
 
 Morris, Judge, supra,
 
 which was an original action for prohibition in that court spoke pointedly.upon the proposition involved in the case before us, as follows: ‘ ‘ The method of winding up the affairs of the bank for the payment of debts and collection of assets is full and complete and should be liberally construed so as to effect the purposes designed. The commissioner of banking is peculiarly fitted by training and experience to effectuate the remedy thus prescribed for the benefit of all concerned. Before enactment of this law, the process of liquidation of insolvent banks through the instrumentalities of the courts had been extended over many years, engendering public complaint and criticism. An expeditious, inexpensive and efficient method was needed, and the Legislature met the need, following the footsteps of other states and the federal government. We are of the opinion that the intent was to make the jurisdiction of the commissioner and the receiver appointéd by him (in some decisions denominated a ‘statutory receiver’) exclusive and may not be defeated or subverted by any party in interest by resort to the courts, unless he has refused to act or is acting in such a way as to jeopardize the rights of the complainant. There is no claim of that character in the bill. ’ ’
 

 It is contended that the legislature in Section 710-101, General Code, relating to the supervision of
 
 *282
 
 banks, and Section 9487, General Code, relating to the supervision of fraternal insurance companies, having expressly made the procedure therein prescribed as to those companies exclusive, and not having embodied similar language in the statute governing the procedure relative to building and loan associations, clearly manifested the intent that the procedure prescribed as to building and loan associations should not be exclusive. This argument would be quite convincing, possibly controlling, if these various provisions had been incorporated in the same act, and thus passed by the legislature, and the argument would be persuasive if the building and loan statutes had been enacted subsequent, instead of prior, to the bank and insurance statutes containing the specific provisions referred to.
 

 Our conclusion is that the court of common pleas is without authority to appoint a receiver in the case now pending in that court, as proposed and contemplated; that such action would be in excess of the jurisdiction conferred upon that court; and the plaintiff has no adequate remedy at law. In response to the assertion that such courts have heretofore appointed receivers of building and loan associations in similar cases, both prior and subsequent to the enactment of Section 687, General Code, it need only be said that it does not appear that the question of authority to so proceed has heretofore been raised or presented.
 

 What rights would arise on behalf of a depositor, or others, in the event of failure of the superintendent of building and loan associations or of the attorney general to promptly, fully and faithfully perform their duties with respect to such institutions
 
 *283
 
 need not be discussed at this time, for no such question is presented in this case.
 

 It follows from tbe foregoing that the writ of prohibition should issue as prayed for.
 

 Writ allowed.
 

 Jones, Day and Robinson, JJ., concur.
 

 Marshall, C. J'., and Allen, J., dissent.