ZINNER v GUARDIAN TRUST CO et
GOOD v GUARDIAN TRUST CO et
GROSSMAN v GUARDIAN TRUST CO et
NATIONAL CITY BANK v HORTON et
ROSENTHAL v SQUIRE, Etc, et
ZINNER v GUARDIAN TRUST CO et
GUARDIAN TRUST CO v
FOREST CITY MOTOR CAR CO et

Ohio Common Pleas, Cuyahoga Co

Nos 425643, 426344, 426550, 425539, 426251, 426542, 389979

Miller, Daus & Schwenger, Cleveland, for Zinner.

John W. Bricker, Atty. Gen., Columbus, and Holliday, Grossman & McAfee, Cleveland, for Guardian Trust Co.

Glen O. Smith, Cleveland, for Good.

Grossman & Grossman, Cleveland, for Grossman.

Holliday, Grossman & McAfee, Cleveland, and John W. Bricker, Atty. Gen., Columbus, for National City Bank.

Philip Schoenberg, Cleveland, for Horton et.

Grossman & Grossman, Cleveland, for Rosenthal.

John W. Bricker, Atty. Gen., Columbus, and Holliday, Grossman & McAfee, Cleveland, for Squire et.

John W. Bricker, Atty. Gen., Columbus, and Holliday, Grossman & McAfee, Cleveland, for Forest City Motor Car Co et.

## OPINION

By JOY SETH HURD, J.

Counsel on both sides have filed voluminous and able briefs to which the court has given careful consideration. In addition to the submission of briefs oral arguments were had by counsel in open court and the matter marked heard and submitted pending the decision of the court on the questions involved. While there are some facts and conditions peculiar to some of the above mentioned cases it is conceded by counsel for all of the parties that the controlling question in each one of these cases in relation to the mottion to strike is whether or not the Superintendent of Banks is vested with exclusive authority to bring the action against the successor trustee for the return of the assets. If this question is answered in the affirmative then the motions to strike in the respective cases should be granted. If this question is answered in the negative then the parties may proceed on their respective petitions and cross-petitions concurrently with the action of the Superintendent of Banks.

The determination of this question depends upon the construction to be placed upon §710-95 GC which prescribes the powers which the Superintendent of Banks shall have and the duties with which he is charged upon taking possession of the business and property of a bank organized under the laws of the State of Ohio. It is of course admitted that the Superintendent of Banks is in charge of the liquidation of the Guardian Trust Company. That part of §710-95 GC which is pertinent to the determination of the issues herein involved may be set forth as follows:

"Sec 710-95 GC. 'Powers and Duties of Superintendent Upon Taking Possession of Bank. The Superintendent of Banks, upon taking possession of the business and property of any bank, shall have, exercise and discharge the following powers, authority and duties without notice or approval of court, but subject to the provisions of this chapter, to-wit:

1. To collect all money due to such bank.

2. To perform all such acts as are desirable or expedient in his discretion to preserve and conserve the assets and property thereof.

\* \* \*

10. For the purpose of executing and performing any of the powers and duties thereby conferred upon him in his name as Superintendent of Banks in charge of the liquidation of such banks; to institute, prosecute and defend any and all actions or proceedings within or without this state, and to execute, acknowledge and deliver any and all deeds, leases, assignments, releases, contracts and other instruments necessary or proper."

\* \* \*

"Without prejudice to or limitation of the foregoing powers, authority and duties, the Superintendent of Banks may, upon application to the Court of Common Pleas in which the proceedings for the liquidation of such bank are pending, or a judge thereof, and on such terms as such court or judge may by order approve, (then follows subdivisions under this head—1, 2, 3, 4, and 5.)

Paragraph 2 of Subdivision V is as follows:

"In case of doubt or difficulty, the Superintendent may ask the instructions of such court, or a judge thereof, as to the manner in which he should exercise his powers and discretion. He shall not be directed or restrained in the exercise of his powers or discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion."

In the case of **Feldman v The Standard Trust Bank et, 46 Oh Ap, page 67 (15 Abs 1)**, the court held that the Superintendent of Banks had the exclusive right to enforce the individual liability of stockholders of a bank under his charge, unless it could be shown that he was not proceeding in good faith. This was prior to the enactment of §710-95 GC in its present form. The court in that case said:

"In view of the comprehensive plan for liquidating state banks provided by the general banking act and the wide powers bestowed upon the state Superintendent of Banks, it seems apparent that the primary duty of enforcing double liability is vested in that official. While no statute, at the time the action was brought, gave the state Superintendent of Banks the exclusive right to enforce the individual liability of stockholders, that exclusive right must necessarily be implied where he is proceeding in good faith in the liquidation of the affairs of the bank. It could not have been within the contemplation of the Legislature that there should be a double administration and liquidation, one by the Superintendent of Banks and another by a receiver appointed in an action brought by a creditor or stockholder to enforce double liability. The Superintendent himself cannot bring the action until he has first ascertained that the assets of the bank will be insufficient to pay its debts and liabilities. If the present action could be maintained, brought as it was on the same day that the Superintendent of Banks took possession, and before any opportunity existed to ascertain the financial condition of the bank, then in any case any creditor or stockholder could maintain such action and the whole plan and scope of the banking act would be nullified. True, no explicit language existed in any statute giving that official exclusive authority, but is not that right necessarily implied by the language of the banking act? When the Superintendent of Banks is in good faith proceeding with the liquidation of the affairs of a bank, the situation is quite similar to that existing in **State ex Bettman v Court of Common Pleas, 124 Oh St 269, 178 NE 258; 78 A.L.R., 1079**, where it was held that the method prescribed by the legislature in case of the liquidation of building and loan companies was specific, adequate, complete, and exclusive, and that no authority existed to appoint a receiver to perform such functions. While the statute relating to the powers of the Superintendent of Banks provides that he may enforce individual liability, it is nevertheless true that when his investigations determine the necessity of such action, the duty rests upon him to take appropriate proceedings for that purpose, as circumstances may require."

At the time of the decision in this case the §710-95 GC contained no provisions regarding the power and the duty of the Superintendent of Banks with respect to litigation "except that the Superintendent of Banks may, if necessary to pay the debts of such banks, enforce the individual liability of the stockholders."

It will be noted that the court in this case cited the case of **State ex Bettman v Court of Common Pleas, 124 Oh St 269**. While this case had to do with the authority conferred by the Legislature upon the State Superintendent of Building and Loan Associations, the reasoning in that case is very persuasive with respect to actions involving the State Superintendent of Banks. Paragraphs 1 and 2 of the syllabus of that case are as follows:

"1. The Legislature, recognizing the quasi-public character of building and loan associations, has enacted laws not only providing for their inspection, supervision and control but also prescribing the method of their dissolution and the liquidation of their assets, and has conferred upon the Superintendent of Building and Loan Associations, the authority essential to accomplish that result expeditiously and economically.

2. The method prescribed by the legislature for the regulation, supervision and control of the affairs of building and loan associations and the method of procedure prescribed for their dissolution and liquidation conserve and secure an equitable distribution of the assets of such company to those entitled thereto; it is specific, adequate, complete and exclusive; and action of a Court of Common Pleas in contravention thereof will be restrained by a writ of prohibition."

The Supreme Court in this case held that there was no authority in the Court of Common Pleas to appoint a receiver to

perform the functions delegated by the Legislature to the Superintendent of Building and Loan Associations. It will be noted that in the Feldman case, supra, there seems to be an implication qualifying the decision with respect to the good faith of the Superintendent of Banks. In other words the decision is predicated upon the proposition that the Superintendent has acted in good faith. In the instant case the charge is made in the petition and cross-petitions generally to the effect that the Superintendent of Banks wrongfully permitted the transfer and participated in an action consenting to the transfer of the corpus of the estate involved, and in so doing failed to exercise and discharge his authority and duties as provided by law and exceeded his discretion and is therefore not acting in good faith. It is claimed particularly in the case of the Guardian Trust Company v The Forest City Motor Car Company, Case No. 389,979, that the Superintendent of Banks and the liquidator failed to exercise and discharge his powers and has exceeded or abused his powers, and the discretion in him reposed. Particular attention is called to the fact that the Superintendent of Banks after the filing of the answer and cross-petition in Cause No. 389,979 Guardian Trust Company v Forest City Motor Car Company above referred to brought an independent action to accomplish the results (case No. 428,759 on the docket of this court) hereinbefore referred to and that neither the Superintendent of Banks nor the Guardian Trust Company individually or as trustee has seen fit to come into The Forest City Motor Car case to intervene and ask for return of the trust. It is claimed by counsel that this action alone is indicative "of the amount of effort which is actually being made by the Superintendent of Banks to set aside this transfer of assets."

Counsel further argue that "after the decision in the Ulmer v Fulton case which followed well established trust principles, and laid down important law in Ohio justifying the filing of the answer and cross petition herein, that even then the Superintendent of Banks filed an application for rehearing in the Supreme Court of the State of Ohio, and permitted to join in said application others whose interests were adverse, namely, representatives of certificate holders and also representatives of successor trustees whose interests were absolutely opposed to those of creditors and depositors". Counsel go on to comment further that "This too is important as indicating the amount of good faith with

which the Superintendent of Banks actually is prosecuting his action." Counsel then proceed to summarize their answer and cross-petition in the Forest City Motor Car case as follows:

"First: A creditor and depositor and stockholder action to bring back the assets into The Guardian Trust Company.

Second. Facts justifying the return of the assets.

Third. The invalidity of the so-called trust.

Fourth. Actions on the part of the Superintendent of Banks consenting to the transfer of the assets which will probably be urged as an estoppel or bar to prevent him from maintaining his action as Superintendent.

Fifth. Facts which show an abuse of discretion upon his part and that he definitely exceeded or abused his powers and discretion and failed to exercise and discharge his authority and duties, as provided by law."

Counsel for Lillie M. Grossman in this case state the legal question as follows:

"Where a creditor, depositor and stockholder of a bank in liquidation alleges that the Superintendent of Banks in charge of the liquidation of the assets of a closed bank has so acted as to fail to exercise and discharge his authority and duties as provided by law and so as to exceed or abuse his powers and discretion and affirmatively alleges that said liquidator has otherwise taken actions in violation of law and has thereby consented to and participated in actions resulting in a diversion of assets properly belonging to the closed bank, can the Superintendent of Banks or the recipient of the assets so wrongfully diverted successfully assert and maintain that under such circumstances the Superintendent of Banks is the only one who can bring any action to restore the assets so diverted?"

Counsel then proceed to state that:

"If the answer is in the affirmative then the Superintendent of Banks may do what he will with the assets of a bank under liquidation and his actions may not be called into question in any court anywhere."

"Such a principle means that if the Superintendent of Banks desires to give away any assets of The Guardian Trust Company now in liquidation, that he may do so without let or hindrance in any tribunal

upon the complaint of any person injured thereby. It means that the courts have voluntarily surrendered all supervision and control over the acts of the Superintendent of Banks, who in liquidating a bank merely acts as the agent and representative of the various interested parties."

The court is of the opinion that in order to meet just such conditions as are presented by counsel in the conclusions above referred to the Legislature enacted as part of §710-95 GC the following provision:

"In case of doubt or difficulty the Superintendent may ask the instructions of such court or a judge thereof, as to the manner in which he should exercise his powers and discretion. He shall not be directed or restrained in the exercise of his powers or discretion, otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion."

It is quite clear from a reading of this provision that it was the intention of the Legislature that the court should control the acts and conduct of the Superintendent of Banks in the exercise of his powers and authority when if ever he should attempt to exceed or abuse his powers and discretion. A reasonable construction of this provision of the statute is that the court retains the power to direct the Superintendent of Banks to do that which he ought to do and retains the power to restrain the Superintendent from doing that which he ought not to do, whenever it is alleged and proved that he has exceeded or abused or is about to exceed or abuse his powers and discretion. In other words, the court is given jurisdiction to control the discretion of the Superintendent of Banks in the administration of his trust in any case of abuse of discretion or excess authority. The Legislature further provided by this section that such action to restrain or direct should be in a suit in equity. It has been argued by counsel that this means necessarily a separate suit in equity. With this contention we do not agree.

It would appear to this court that such action can be taken by the court under authority of this section of the statute in any proceeding in equity where the Superintendent of Banks is subject to the jurisdiction of the court. This effectually disposes of the argument that if these motions are dismissed the Superintendent may do just as he pleases with the assets of the trust. He may proceed in the exercise

of his power with respect to the administration of his trust, just so long as he does not exceed or abuse his powers and discretion. Whenever he does so exceed his powers and discretion he is subject to the jurisdiction of a court of equity either by way of direction or restraint.

One serious difficulty presented in the position of the petitioners and cross-petitioners in these cases is the fact that they are praying at the hands of this court for authority to conduct litigation seeking precisely the same relief as is sought by the Superintendent of Banks in a separate suit in this court, namely, the return of the assets of the trust to the Superintendent of Banks. If the petitioners and cross-petitioners were to bring an action in equity under the provisions of §710-95 GC seeking to direct or restrain the Superintendent of Banks what else could they pray for at the hands of the court? Could it be for anything other than that the Superintendent of Banks bring the very action which he is bringing at this time? We think not.

The prayer of the petition would necessarily have to be in substance that the Superintendent of Banks by failing to bring such an action was exceeding or abusing his powers and discretion and that he should be directed to exercise his powers and discretion in such a manner as to procure for the benefit of the trust under his administration the assets which are the subject of this litigation. Certainly under the provisions of this section of the statute the petitioners and cross-petitioners could not pray that they be allowed to conduct this litigation.

We reach the conclusion from an examination of §710-95 GC as amended since the decision in the Feldman case, supra, that the Superintendent of Banks has the exclusive right to institute, prosecute and defend any and all actions or proceedings within or without his state for the purpose of executing and performing any of the powers and duties conferred upon him in the absence of bad faith and we conclude from the provisions of **Paragraph 5, Second Division of §710-95 GC** that relief afforded to a depositor or stockholder where it is alleged that the Superintendent is exceeding his powers or abusing his discretion and therefore acting in bad faith, is in an action in equity against the Superintendent of Banks directing him to do something that he should do or resertaining him from doing something that he should not do.

Doubt is expressed in some of the briefs filed by counsel and was also expressed in

oral argument as to whether or not the Superintendent of Banks is capable of conducting this litigation successfully or as to whether or not he will conduct the same in good faith. It appears to this court that under well established principles of law it does not lie with any of the parties to assume that the Superintendent of Banks will not do his duty. The presumption of law in all such cases is that a public official will proceed to act in a lawful and proper manner, rather than in an illegal or improper manner.

A great number of cases have been presented in support of the proposition herein determined by this court. However, in view of the construction placed upon the provisions of §710-95 GC by this court it is unnecessary to review these decisions at length.

To sum up it appears to the court that the Superintendent of Banks is proceeding to secure the very same relief which the cross-petitioners and petitioners are seeking to secure, namely, the return of the assets of the trust to the Superintendent of Banks. We hold in respect of this phase of the litigation that exclusive authority rests with the Superintendent of Banks to conduct such an action. If the parties were to pray for an order requiring the Superintendent of Banks to do his duty in the premises it would be to do the very thing which he is now attempting to do by proper action in this court.

Reaching these conclusions we are of the opinion that the motions filed by the Superintendent of Banks in the respective cases should be granted as well as the motions filed by the defendants the National City Bank as successor trustee. By taking such action this court is not depriving the petitioners and cross-petitioners of an opportunity to observe and scrutinize the conduct of this litigation. If at any time during the conduct of this litigation the complainants are able to allege and prove that the Superintendent of Banks is exceeding his powers or abusing his discretion in any way or is about to do so the remedy is open by a suit in equity to invoke the equitable powers of the court under the provisions of §710-95 GC.

In addition to this the court assures counsel that briefs amici curiae will be entertained at any stage of the proceedings by the court where controverted points of law are involved. We are of the opinion that the decision of the court is in harmony with sound principles of law as enunciated in the most pertinent Ohio cases on the subject, namely, the case of **Fulton, Superin-**

tendent v **Wetzel, 47 Oh Ap 72, (16 Abs 710)**, and the case of **State ex Bettman v Court of Common Pleas, 124 Oh St, 269**, and is in harmony with decisions of courts of other jurisdictions, where like questions have been presented for determination.

The opinion and decision of the corut in those cases is also in accord with previous rulings of this court in the following cases:

Good v The Union Trust Company et, No. 466,319.

Bing; Trustee v The Union Trust Company et, No. 390,739.

Bauman, Trustee v The Union Trust Company et, No. 426,252.

While in the foregoing cases heretofore decided by this court no opinions have been rendered, the court believes it advisable at this time, in deciding the questions at issue, to set forth briefly the reasons for such action.

Action accordingly. The various motions to dismiss will be granted and exceptions may be noted.