Two principal questions are presented by this appeal. The first is whether the order of the trial court overruling the superintendent's demurrer to the amended and supplemental petition and also his motion to strike such petition from the files, constituted a final order from which an appeal would lie. *Page 469 
While the general rule is that an order overruling a general demurrer is not a final order permitting appeal, a majority of the court is of the opinion that the order in controversy here did constitute a final order, because in effect it determined that the superintendent, after taking possession of the building and loan association for liquidation under the statutes, was precluded from enforcing the superadded liability against the stockholders. Such order therefore affected "a substantial right" within the purview of Section 12223-2, General Code. In fact, the order amounted to an absolute declaration that the superintendent lacked the authority to maintain an action for the superadded liability as a part of the liquidating process, thereby denying him finally the exercise of that function.
The second question is whether, upon taking statutory possession of the property and business of the association in 1941, the superintendent then became vested with the exclusive privilege of enforcing the superadded liability against the stockholders.
It is the contention of the appellant that "the exclusive right of enforcement of superadded liability is vested in the superintendent only so long as he is in possession of a defunct financial institution for the purposes of liquidation," and that since the present action was properly begun at a time when he was out of possession, he could not divest the appellant of the right to maintain such action by a subsequent takeover under Sections 687 and 687-1, General Code.
Section 687-10, General Code, reads in part as follows:
"The Superintendent of Building and Loan Associations, upon taking possession of the property and business of any domestic building and loan association pursuant to this chapter, shall have, exercise and discharge the following powers, authority and duties, without *Page 470 
order of court but subject to the provisions of this chapter, to wit: * * *
"9. If he ascertains that the assets of such association will be insufficient to pay its debts and liabilities, to enforce such individual liability of each shareholder as may exist. Until an order to declare and pay a final dividend shall be entered in such proceedings the right to enforce such liability for the benefit of all creditors is hereby vested exclusively in the superintendent."
Almost the identical language is used in Section 710-95, General Code, in relation to the state Superintendent of Banks.
Because of the nature of their business in dealing with the public's money, state building and loan associations and banks are quasi-public institutions. They are wholly creatures of statute and transact business by legislative sanction. They are subject to state regulation and control, not only by virtue of constitutional provisions but also because of the state's inherent police power. In its wisdom, the General Assembly has seen fit to create the office of Superintendent of Building and Loan Associations, whose duties are to see that the various laws appertaining to such associations are executed and administered in the public interest.
When, upon examination, the superintendent discovers that a building and loan association is in an unsafe or unsound condition, he is directed, with the written approval of his superior, to take charge of the affairs of such association and thereafter, in accordance with the statutes and under the supervision of the Court of Common Pleas, is empowered to do all things necessary and proper for the protection of every interested person.
In reading the detailed statutes relating to building and loan associations, it is apparent that the state has preempted the field in connection with the supervision *Page 471 
of these institutions, and when the superintendent takes over an association for liquidation all phases of such activity, including the enforcement of the superadded liability of stockholders, become his to perform to the exclusion of creditors or others affected. The right of others to proceed is suspended at least until the declaration of a final dividend in the proceedings. The foregoing observations are in accord with the views expressed by this court in a number of cases. SeeState, ex rel. Bettman, Atty. Genl., v. Court of Common Pleas,124 Ohio St. 269, 178 N.E. 258; Slocum v. Mutual Bldg. Investment Co., 130 Ohio St. 312, 199 N.E. 175; State, exrel. Squire, Supt. of Banks, v. Steck, 132 Ohio St. 198,5 N.E.2d 919.
If before the superintendent has taken over a financial institution for liquidation, creditors have inaugurated an action to enforce superadded liability of the stockholders, that action must give way to the superior rights of the superintendent.
We assume that when the facts of a particular case demand that the superintendent in charge of liquidation proceed to impose the double liability on stockholders, and he fails or refuses to respond, creditors could invoke the offices of the Court of Common Pleas to direct the superintendent to act appropriately, on the ground of abuse of discretion. Section 687-11, General Code.
Considering the judgment of the Court of Appeals herein to be correct, we affirm the same.
Judgment affirmed.
WEYGANDT, C.J., TURNER, MATTHIAS and HART, JJ., concur.
WILLIAMS, J., concurs in paragraph two of the syllabus but dissents from paragraph one and from the judgment.
BELL, J., not participating. *Page 472