SANDERS *v.* NEELY *et al.*

(In Banc.   Oct. 9, 1944.)

[19 So. (2d) 424.   No. 35632.]

**George E. Shaw**, of Jackson, and **Cameron & Wills**, of Meridian, for appellant.

Niles Moseley and Creekmore & Creekmore, all of Jackson, for appellees.

74

Greek L. Rice, Attorney General, Wells, Wells, Lipscomb & Newman and Green & Green, all of Jackson, amici curiae.

78

Argued orally by **Ben Cameron**, for appellant, by **H. H. Creekmore**, for appellee, and by **Garner W. Green**, amici curiae.

**McGehee, J.**, delivered the opinion of the court.

These are two questions here for decision: First, whether or not the provisions of Chapter 3, Vol. 4, Title 22, Sections 5616-5834 inclusive, Code of 1942, regulating insurance companies and prescribing the duties of the Commissioner of Insurance in regard to the examination thereof, were intended by the legislature to abrogate or repeal the common law right of a stockholder in a domestic insurance company to inspect the books and records of such corporation; second, if such common law right of the stockholder still exists in this state, then does the petition of the appellant, R. D. Sanders, filed herein against the appellees, Standard Life Insurance Company of the South and its executive officers, asking

for the issuance of a writ of mandamus to enforce such right of inspection, contain the necessary allegations of merit to withstand the demurrer of the defendants thereto, when such petition alleges in substance that the defendant insurance company is a domestic corporation; that the petitioner owns a substantial amount of the capital stock thereof; that he had asked the executive officers of said insurance company to permit him to inspect its books and records ''at such times and under conditions that would not interfere with the operation or conduct of the affairs'' thereof; that such request, was made on several occasions shortly prior to the filing of the petition herein, and had in each instance been refused; and that the purpose of such stockholder in making the request was ''in order to ascertain and know how the affairs of the Company are conducted and whether or not the capital of which he has contributed a share is being prudently and profitably employed, and in order that he may protect the business and interests of said corporation and his interests as such stockholder; . . . ''

The trial court was of the opinion that the first of the foregoing questions should be answered in the affirmative; also, the court sustained the further contention of the defendants to the effect that the petition was otherwise insufficient to state a case for the relief prayed for because of its failure to allege that the petitioner had requested such right of inspection in good faith and with proper motives, or that he desired to thereby obtain information germane to his interest as a stockholder and essential to the protection of his rights as such, or to allege wherein the inspection would serve any good purpose or promote the welfare of either the stockholder or said corporation; and because the petition also failed to affirmatively show that such inspection was not desired merely to satisfy an idle curiosity, or for the purposes of speculation, or to display a spirit of hostility to the corporation. The demurrer having been sustained upon

the foregoing theories, the petitioner declined to amend, and the proceeding was dismissed.

It would seem more conducive to the logical sequence of this opinion if we should discuss the two stated questions here involved in their reverse order; that is to say, if we should first determine what the right of the stockholder was at common law before we undertake to say whether or not the legislature has clearly manifested an intention to abrogate or repeal such right by the enactment of the provisions of the said Code Chapter on Insurance.

The common law right of a stockholder to inspect the books and records of his corporation is stated in 13 Am. Jur. 480, as follows: "A stockholder in a corporation has, in the very nature of things and upon principles of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted and whether the capital of which he has contributed a share is being prudently and profitably employed. In order to obtain this information he has . . . a common-law right, at proper and seasonable times, to inspect all the books and records of the corporation." And, it is not contended by counsel for the appellees herein that this is not an accurate statement of the rule, but it is stated by them, and correctly so, that this common law right can be exercised by the stockholder only in good faith and for a just, useful or reasonable purpose germane to his interest as a stockholder; and that such right will not be enforced by the courts for speculative purpose or to gratify idle curiosity, and particularly when the purpose of the inspection is hostile to the corporation. In other words, the appellees contend that to this extent the right is not absolute, but is a qualified one.

It may be conceded that such right as a stockholder may have in this state to inspect and examine the books and records of his corporation are governed by the common law, since we have no statute providing therefor, and also that the same is qualified to the extent above stated.

Nevertheless, it will be seen that the allegation contained in the petition before us setting forth the purpose for which the inspection was desired has clearly brought the petitioner within the rule entitling him thereto, unless the defendants shall plead and prove as an affirmative defense in response to the petition that the stockholder in the instant case is actuated by bad motives or that the inspection is not desired in order to obtain information germane to his interest as a stockholder, but is for speculative purposes or to gratify idle curiosity, or out of a spirit of hostility to the welfare of the corporation, since good motives and a proper purpose will be presumed, and the converse thereof cannot be assumed by the court in passing upon the sufficiency of the petition herein if we are to follow the well established rule in that behalf as stated in 13 Am. Jur. 488, where it is said: "It will not be presumed, however, when a request for inspection is made that the motive of the stockholder is an improper one or that his purpose is other than in the interest of the corporation; and if the motive or purpose is charged to be otherwise, the burden is on the officers refusing the request or the corporation to establish it." Also see Note in 80 A. L. R. 1520; and William Coale Development Co. v. Kennedy, 121 Ohio St. 582, 170 N. E. 434.

Unless such a defensive showing is made by an affirmative plea and proof in support thereof, the proper exercise of judicial discretion would require the issuance of the writ of mandamus prayed for, under such limitations as in the sound discretion of the court may appear just and reasonable, provided, of course, that such common law right has not been abrogated or repealed in this state, since it is conceded that if such right exists at all then it may be enforced by mandamus as a proper remedy.

Many of the states, if not a majority of them, have enacted statutes guaranteeing such right of inspection, and the only distinction between the common law right and that given by these statutes is that at common law the right is qualified to the extent hereinbefore mentioned

as to the motives of the stockholder, etc., whereas, under the statutes the motive is immaterial, the right being an absolute one. So that for the purpose of this decision, and assuming that the stockholder still has such common law right in this state, the decisions of the courts in other jurisdictions where the right is governed by statute should be deemed applicable here, in the absence of the affirmative plea and proof hereinbefore referred to.

This brings us to a consideration of the question as to whether or not the common law right of the stockholder has been abrogated or repealed by our Code Chapter on Insurance. To the extent that statutes, by their terms and necessary implications, and the common law are not repugnant, they co-exist and will be given effect. The presumption is that the legislature does not intend to make alterations in the law beyond what it explicitly declares, either by express terms or by necessary implication, and does not intend to overthrow fundamental principles or to infringe existing rights, without expressing or clearly implying such intention. Duncan v. Rudolph, 245 Ala. 175, 16 So. (2d) 313. And, the rule is stated in 59 C. J. 1040, that: "Statutes are not to be understood as affecting any change in the common law beyond that which is clearly indicated, either by express terms or by necessary implication from the language used. . . . " This principle is so established by both reason and authority that we deem a citation of the numerous cases so holding in this and other jurisdictions to be unnecessary.

It is relevant to observe that no case has been called to our attention wherein it has been held that statutes regulating various kinds of insurance and providing for the examination of the companies by a Commissioner of Insurance have the effect of abrogating or adversely affecting a stockholder's right of inspection. But, it is stated in 13 Am. Jur. 481, that "No distinction seems to be drawn between the various classes of corporations in regard to the right of inspection." The precise question does not appear to have been decided, but in the case of

Burns v. Drennen, 220 Ala. 404, 125 So. 667, the statutory right of the stockholder for an inspection was enforced where the president of the insurance company refused the inspection, basing his refusal upon the ground that when such request was made the stockholder was engaged in litigation which rendered his attitude one of hostility to the corporation, and also because of a recent examination of the company by the Insurance Department under the authority of Chapter 306, Alabama Code of 1923, Code Ala. 1940, Tit. 28, sec. 40 et seq., and for the further reason that the company had offered to have another examination made by said state department. The court held that the burden of proof was upon the defendant to establish that the request for inspection was prompted by improper motives, and that the examination by the Insurance Department and the offer to have an additional one made, were immaterial. It is true that Alabama has a statute guaranteeing the stockholder's right of inspection, but it is merely declaratory of the common law and enhances the right only to the extent that the motive which prompts the demand for inspection does not affect the right.

Also, in the case of Guthrie v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 7, 50 L. Ed. 130, 4 Ann. Cas. 433, the Supreme Court of the United States upheld the right of a stockholder in a national bank to inspect its books and records as against the defense that the National Banking Act had completely occupied the field in providing for frequent examinations of such banks under the supervision of the Comptroller of the Currency, and wherein the Court said: "It is examined at stated periods, and may be the subject of special examination by order of the Comptroller. But it is owned by shareholders, like other banking institutions. . . . There is nothing in the banking act, as we read it, which limits a shareholder or shareholders, seeking knowledge for a lawful purpose of an institution in which they have a proprietary interest, to an application to the Comptroller for an examination by a pub-

lic officer of the affairs of their company. A director need only 10 shares of the stock. . . . The directors together need not necessarily own the controlling interest in the bank. Yet it is contended they, or the officers of their choice, may deny stockholders the privilege of inspecting, for legitimate purposes, the property which belongs to them. . . . Finding nothing in the act of Congress limiting the common-law right of the shareholder, we think that, under the circumstances of this case, he was wrongfully denied an inspection of the books and accounts of the bank by its officers.''

In the case of Guthrie v. Harkness, supra, the stockholder seems to have relied upon a statute of the State of Utah granting such right of inspection, and the lower court of that state found that the purpose of the stockholder Harkness in seeking the inspection was "for the purpose of ascertaining the true financial condition of said bank, and also for the purpose of ascertaining the value of his stock in said bank, and also for the purpose of ascertaining whether the business affairs of the said bank have been conducted acording to law.'' And, although the alleged right of inspection was predicated on a statute, it will be seen that the Supreme Court of the United States dealt with the question as if the common law right of the stockholder was alone involved.

But, it is urged that under the National Banking Act, 12 U. S. C. A., sec. 21 et seq., the reports made by banking institutions to the Comptroller of the Currency, as well as the reports made to him by the Federal Bank Examiners, are not made available to the stockholders of such banks as public records, and that this fact, together with the Utah Statute, should distinguish the Harkness case from the case now under consideration. However, it will be observed that the underlying reasons advanced by the court for its decision in that case were, First, that: "There is nothing in the banking act, as we read it, which limits a shareholder . . . to an application to the Comptroller for an examination''; and, second, the

fundamental legal concept that the books and records of a corporation belong to its stockholders; that is to say, the right of inspection is inherent in the ownership of the stock and the exercise thereof is an incident thereto. The circumstance that the reports made to the Comptroller of the Currency by the banking institution and the bank examiners were not available for inspection as public records did not enter into the court's decision on the question of whether or not the National Banking Act had abrogated the right of the stockholder to make the inspection therein petitioned for.

It must be conceded that the Federal Banking Statutes (Title 12 U. S. C. A. containing more than 1,000 pages) has occupied the National Banking field as completely, if not more so, than the field of insurance has been occupied by the Code chapter on the subject of Insurance in this State.

There are numerous decisions of this court which hold that where a statute creates a right and prescribes a remedy which is full, complete and adequate, that remedy will ordinarily be construed as exclusive of all others; but the difficulty in applying that rule to the case at bar is that the provisions of our Insurance Code, as well as those of the National Banking Act invoked in the Harkness case, do not create the right of a stockholder to inspect the books and records of his corporation. Nor do our insurance laws provide a remedy whereby a stockholder may obtain thereunder an inspection at all, except under a given condition where to invoke such remedy would be primarily for the benefit of policyholders and creditors, and in most instances detrimental to the interest of the stockholders and to the welfare of the corporation, as will be hereinafter shown. Moreover, the right of inspection already existed under the common law, and when the stockholder made his request in the instant case to be allowed to inspect the books and records of his company, he was not seeking to avail himself of a remedy but rather to exercise a right. Therefore, the cases re-

lied on by the appellees where statutes have created a tax and provided a remedy to enforce its collection, such as in a drainage district, inheritance, income, or sales tax case, are not in our opinion controlling here.

Neither do we think that the case of Grimes v. Central Ins. Co., 172 Ky. 18, 188 S. W. 901, 902, wherein it was held that the insurance laws of Kentucky providing for the visitation and examination of insurance companies by the Insurance Commissioner, and for reports and statements to be made by the companies and filed with the Department, and wherein the court held that the right to obtain the appointment of a receiver was a right vested exclusively in such Commissioner, contrary to the contention that the stockholders still had such right, is at all decisive of the question here involved, for the reason that the public interest requires that the right of policyholders in the assets of the corporation and the reserves maintained for their protection should be administered by the Commissioner as a receiver, and in such manner as to likewise protect the interest of the stockholders. Moreover, the Commissioner would not be free to exercise his general supervision of such companies in the interest of the policyholders and the public if the right of stockholders to maintain an action for receivers was left unimpaired. However, the exercise of the right of a stockholder to make an inspection of the books and records of his corporation is in no manner inconsistent with the rights conferred on the Commissioner of our Code Chapter on Insurance.

Moreover, the case of Grimes v. Central Ins. Co., supra, and other such cases involving the appointment of receivers, deal with the exclusiveness of a remedy which has been clearly substituted for that formerly afforded a stockholder; whereas, a request of the stockholder to inspect the books and records of the company involves the right to ascertain whether certain facts exist, while a request for the appointment of a receiver involves the assertion of a remedy after the facts requiring such

appointment have been ascertained. Then too, the substantive right of the stockholder to have a receiver appointed for the protection of his interest and that of the policyholders is not abrogated by the authority of the Commissioner to obtain the appointment of a receiver, since he may be compelled by the stockholder to do so in a proper case by writ of mandamus.

Nor can it be said that the cases wherein shareholders have been denied the remedy by mandamus to enforce the alleged right to inspect the books and records of building and loan associations are controlling in the instant case, when considered in connection with the decisions in Burns v. Drennen and Guthrie v. Harkness, supra, for the reason that the right of a stockholder in such cases is to receive a fixed rate of interest on his investments, payable at stated intervals, or the payment to him of the total amount thereof, and not the right to participate in the management of such association. If the association meets its obligations, including those to its shareholders, he may not complain. Moreover, such enterprises are fundamentally different from the ordinary commercial corporation. Cotonio v. Italo-American Homestead Ass'n, 177 La. 766, 149 So. 449; State ex rel. Schomberg v. Home Mut. Bldg. & Loan Ass'n, 220 Wis. 649, 265 N. W. 701; State ex rel. Bettman v. Court of Common Pleas, 124 Ohio St. 269, 178 N. E. 258, 78 A. L. R. 1079; Huntington County Loan & Savings Ass'n v. Fulk, 158 Ind. 113, 63 N. E. 123; Ulmer v. Falmouth Loan & Building Ass'n, 93 Me. 302, 45 A. 32; State of Washington ex rel. Wicks v. Puget Sound Savings & Loan Ass'n, 8 Wash. (2d) 599, 113 P. (2d) 70, 134 A. L. R. 696.

At common law, a stockholder was entitled to ascertain whether the capital of his corporation is being prudently and profitably employed, to acquire information to be used at a forthcoming meeting of the stockholders, to become advised of his status as a stockholder and as to the value of his stock, to ascertain whether certain directors are attending the meetings of the board so as to

inform himself as to whether the best interest of the corporation will be served by the election of other directors, to investigate the cost of real estate held by the corporation and the amounts invested in improvements and repairs thereon in order that he may know whether a price authorized by the directors for the sale thereof is fair and adequate, and for the purpose of otherwise acquainting himself with the conduct of the business and the fidelity of the agents and employees thereof; whereas, the Commissioner of Insurance is not required to examine the affairs of each domestic insurance company to obtain such information for the stockholder, but only as to its financial ability and condition as often as once in two years, or whenever he deems it prudent to do so, or "upon the request of five or more of the stockholders, policyholders, creditors, or other persons pecuniarily interested therein, who shall make affidavit of their belief with specifications of their reasons therefor, that such company is in an unsound condition." Section 5628, Code of 1942.

Evidently the legislature meant by "unsound" such a condition as would call for decisive action on the part of the Commissioner in the interest of the policyholder and the public, whose welfare is his chief concern. Except for the accomplishment of such an objective, there would be no more reason for the legislature to provide for the examination of the books and records of an insurance company than to do so in regard to those of an incorporated department store, lumber company or any other corporate enterprise whose stockholders may desire information germane to their interest as such.

If the stockholder must make an affidavit of unsoundness before he can obtain an examination of the scope and extent desired, then how is he to obtain the information on which to base the affidavit if he is denied access to the proper sources of knowledge as to the facts upon which such unsoundness must depend?

The insurance companies are required on or before the first day of March in each year to file an annual statement

in the Office of the Commissioner on a form prepared and furnished by him, and only *in such detail as the Commissioner shall prescribe,* showing the business standing and financial condition of the company on the preceding 31st day of December, and not as of the time when filed or when the stockholder may request the right of inspection. Section 5726, Code of 1942. The Commissioner of Insurance is not required by any of the provisions of our insurance laws to obtain for a stockholder all of the information heretofore mentioned to which he was entitled at common law, nor can the aid of the Commissioner be enlisted by a stockholder to obtain any kind of an examination as a matter of statutory right under any of such insurance statutes unless he is willing to join in an affidavit as aforesaid with at least four other stockholders that his company is in an unsound condition—the same right that is accorded to policyholders, creditors and other persons pecuniarily interested. Then if the affidavit in the opinion of the Commissioner is true, the said official would be entitled to revoke the license of the company under Section 5638, Code of 1942.

The authority of the Commisioner to intervene and take further action following an examination made at the instance of any of the persons aforesaid is conferred by Section 5630, Code of 1942, wherein it is provided that "If, upon examination, he is of the opinion that any domestic insurance company is insolvent, or has exceeded its powers, or has failed to comply with any provision of law applicable to it, or that its condition is such as to render its further proceeding hazardous to the public or its policyholders, he shall suspend its license . . . "; also, it is provided by Section 5643, Code of 1942, that if it shall appear to the Commissioner that any insurance company doing business in this state is insolvent or is in such condition "that its further transaction of business wll be hazardous to its policyholders, or to its creditors, or to the public, . . . it shall be his duty to file a petition in the chancery court . . . praying the appointment of

a receiver for such company." That is to say, the Commissioner's concern shall be the interest of the "policyholders," the "creditors" and the "public."

It must be conceded that the only right accorded by the insurance laws to a stockholder to have an examination made of the books and records of a domestic insurance company at all is under the said Section 5628 upon which the contention of appellees is primarily based that the stockholder's right of inspection has been abrogated or repealed, and then only by joining four others in an affidavit that such company is in an unsound condition, as aforesaid, thereby giving rise to such unfavorable implications as would likely prove detrimental to the interest of the affiants and all other stockholders similarly situated, even though no harm would result to the policyholders since the insurance company is required to deposit with the State Treasurer for the benefit of policyholders a sufficient amount of solvent securities for their protection under Section 5669. Code of 1942.

But, at common law, the stockholder was not required to wait until his corporation was in an unsound condition to exercise his right of inspection so as to ascertain whether its capital was being prudently and profitably employed, and for the other purposes hereinbefore set forth, and we find nothing in any of the provisions of our Code Chapter on Insurance that would fairly indicate an intention on the part of the legislature to abrogate or repeal these valuable rights held by the stockholder at common law.

The duty and responsibility of the Commissioner of Insurance is prescribed primarily for the protection of the policyholders and the public, such as approving the form of policies, requiring the deposit of sufficient securities with the state, and such other supervision as is provided for in the interest of policyholders and the public. These statutory provisions were not intended to deal with the relation existing between the insurance corporation and its stockholders, or to require the Commis-

sioner to concern himself with the internal affairs and details of operation or management. Instead of the Insurance Department having completely occupied the field as to the rights and remedies of the stockholder against his corporation, the statutes governing the duty of the Commissioner in regard thereto barely touch that field, and then only to give the stockholder the right to invoke the aid of the Commissioner when his company has reached a state of unsoundness—a statutory procedure provided for in addition to his common law authority for making an inspection of his own, as an incident to his ownership of stock.

In response to the contention that a writ of mandamus should not be issued herein because of the fact that the appellees acted pursuant to the interpretation of the Insurance Commissioner, based, upon advice obtained from the state's legal department, as to whether the stockholder's right of inspection had been abrogated by the insurance laws, and that the insurance company was justified in following such departmental construction, it may be said that while the authority to approve forms of policies and to perform other functions, both judicial and ministerial, is conferred upon the Commissioner by the insurance laws, they do not contain any provision vesting in him the power to determine whether or not the common law right of a stockholder to make the inspection asked for herein has been abrogated. The exercise of such a right concerns only the stockholder and the corporation, so long as it does not unreasonably interfere with the discharge of the duties imposed by law on the Commissioner.

Finally, it is urged that if one of many stockholders is allowed to inspect the books and records of this corporation, then all of them who may desire to do so can demand the same right, and thereby interrupt the orderly conduct of the business. But, suffice it to say, this common law right of the stockholder unquestionably exists as to all corporations in this state, not affected with a

public interest, and has been granted by statute in many states in favor of all stockholders in any private corporation, whether affected with a public interest or not, and thus far the recognition of such right does not appear to have unduly interrupted the conduct of corporate business, or to have resulted in intolerable demands by stockholders in that behalf.

What we have said is in accord with the idea that the business, books and records of a corporation are the property of its stockholders, and that their officers, agents and employees are in possession of such books and records as trustees for the stockholders, without the right to deny any stockholder access thereto for a proper purpose at reasonable times.

The judgment of the court below which sustained a demurrer to the petition and dismissed the case must therefore be reversed and the cause remanded for further proceedings.

Reversed and remanded.

PARTIALLY DISSENTING OPINION.

**Roberds, J.,** delivered a partially dissenting opinion.

I cannot agree with the majority opinion in its entirety. I think Sections 5628 and 5715, Code 1942, have some effect, else there was no need to enact them. These two sections cover in their scope the financial condition of the Insurance Company and its method of doing business. Within that field and to that extent they apply alike to each and every stockholder, and within their scope are, in my opinion, exclusive of other remedies. Section 5628 provides that five or more stockholders may require an examination of an insurance company by the Commissioner of Insurance upon application to him accompanied by affidavit that such company is in an unsound condition. *Unsound* is not the equivalent of *insolvent*. It would not necessarily follow that stockholders were con-

demning their corporation by saying that in their opinion it was in an unsound condition. This might relate to the management or perhaps to the mere failure to pay a dividend when other like corporations were paying dividends. In addition to this, such application to the Commissioner is not necessarily public. In other words, the procedure outlined in that Section need not do harm to the corporation. Section 5715 provides that any citizen of the state, whether a stockholder or not, may complain that any insurance company authorized to do business in this state has violated any of the provisions of Chapter 3, Code of 1942, and thereby require the Commissioner to diligently investigate the matter. There may be some question whether this section is limited to foreign corporations, but counsel for appellee in this case concede it is available to Sanders, who is a resident of Mississippi.

The outstanding purpose of the state legislature in creating the Department of Insurance and making it a part of the state government was to protect the interests and rights of the policyholders in insurance companies. Many policyholders have their life's savings invested in these companies. It is a very important matter to the state that the policies be paid and the savings of investors be not lost. In guarding the rights of the policyholders the legislature is also protecting the rights of the stockholders and others who are financially interested in life insurance companies. The whole legislative scheme is for supervision and control of these companies by a state official. The Commissioner of Insurance is a state officer and is elected by the people of the entire state. He must possess the same qualifications as the Secretary of State. He is required to take an oath of office and execute a bond in the sum of $25,000. His duties and powers are extensive. No insurance corporation may be created in this state without his approval of the charter. He must approve the articles of association and the by-laws; ascertain the net value of every policy; require reserves and securities to be deposited; pass on the forms of policies;

permit or deny the sale of stock in this state and the increase or reduction of the capital stock; supervise the agents of insurance companies; make a thorough examination of the financial condition of all insurance companies and their methods of doing business. He must do that at stated times and may do so at any time. He reports to the Auditor each month all taxes and license fees received by him; makes an annual report to the Governor showing the condition of all insurance companies, the licenses issued by him and the taxes paid to him, with a condensed statement of all the reports of the insurance companies to him. The Governor transmits this report to the legislature. It is the duty of the Commissioner to see that all laws relating to insurance matters are faithfully executed and he may enforce compliance with said laws by suit in the name of the state. The insurance companies are required to submit numerous reports and statements to the Commissioner accompanied by oath showing the business and financial standing of the company and the amount of reserves and the schedule of Mississippi securities. All reports of the companies to the Commissioner and the results of all examinations by him, and all of his reports to the Governor are public and open to the inspection and examination of all stockholders. Apparently these sources would afford any stockholder ample opportunity to ascertain any fact or information relating to the financial condition or management of the corporation. It therefore seems to me clear that within the scope of the foregoing inspection statutes they are exclusive. That has been the result where special statutes provide for the appointment of receivers of insurance companies. Grimes v. Central Ins. Co., 172 Ky. 18, 188 S. W. 901, 903. It has likewise been the result in the appointment of receivers of building and loan associations. Wright v. Federal Reserve Ins. Co., 131 Kan. 301, 293 P. 945; State ex rel. Bettman v. Court of Common Pleas, 124 Ohio St. 269, 178 N. E. 258, 78 A. L. R. 1079; Huntington County Loan & Sav. Ass'n v. Fulk,

.158 Ind. 113, 63 N. E. 123. That has been the effect on the right of stockholders in building and loan associations to inspect the books and records of the corporation where statutes have provided for inspection and examination by a state official. State of Washington ex rel. Wicks v. Puget Sound Sav. & Loan Ass'n, 8 Wash. (2d) 599, 113 P. (2d) 70, 134 A. L. R. 696.

Burns v. Drennen, 220 Ala. 404, 125 So. 667, 668, cited in the main opinion, does not hold to the contrary. In that case Alabama had a statute which conferred the absolute right upon a stockholder to examine and inspect the books, the only limitation being "at reasonable and proper times." Nor does Guthrie v. Harkness, cited in the main opinion, hold to the contrary. Utah had in substance the same statute as Alabama. That statute was enacted after the enactment of the National Banking Act. The question was whether the Utah statute applied to national banks. It did. In addition, the reports of national banks to the comptroller and the result of his inspections of such banks are not open to the public nor to the stockholders.

If Sanders has the right to inspect all the records of this corporation to learn how the affairs are being conducted and "in order that he may protect the business," then every stockholder of this, and all like corporations, has the same right. In some such corporations there are thousands of stockholders. Nor does the amount of stock affect the right. The owner of one share would have the same right as the owner of a thousand shares. And if such right exists, a court cannot deny it, and the same shareholder might exercise it as often as he desired. No insurance corporation, so harassed, could continue to exist.

What I have said should apply and be limited to all questions which affect policyholders alike. If the information sought by the shareholder pertains especially to some question peculiar to his stock these statutes do not apply and his common law right of inspection is in full

force. As to all questions affecting all stockholders alike these sections are exclusive and must be followed. If the Commissioner should refuse to grant the request (and he has no discretion if the shareholders comply with Section 5628) he might then resort to the court, showing such wrongful refusal. In all other cases not covered by these sections the common law right of inspection exists. This result would carry out the object and purpose of the statutes, serve the public policy of the state and at the same time preserve the rights of the stockholders.

**Anderson, J.,** joins in this opinion.