KAVANAUGH et al. v. UNDERWRITERS LIFE INS. CO. et al.

No. 2913.

Court of Civil Appeals of Texas. Waco.

June 22, 1950.

Rehearing Denied July 13, 1950.

Cofer & Cofer, Austin, H. S. Beard, Waco, for appellants.

Black & Stayton, Austin, Richey, Sheehy & Teeling, Waco, for appellees.

LESTER, Chief Justice.

John H. Kavanaugh and two other policyholders brought this suit against the Underwriters Life Insurance Company, a mutual assessment company, and its directors and officers, alleging mismanagement upon the part of said directors in that monthly assessments levied by the directors are inadequate to pay the claims that will arise under the outstanding policies heretofore

issued by said company. They further alleged that too much of a certain fund has been used in paying salaries to its president and to one of its directors and that not enough of said fund has been used in attempting to secure new members for said company. They also sought a mandatory order directing the directors to hold a special policyholders meeting for the purpose of removing the officers and directors for mismanagement and for the election of new directors, who in turn should elect new officers; and for an order requiring the president and one of its directors to account to the company for excess salaries heretofore received by them; and sought to recover on behalf of the policyholders the money alleged to have been wrongfully paid to them.

The defendants filed a plea to the jurisdiction of the court, alleging: "This court has no jurisdiction of this cause because, as appears from plaintiffs' petition, this suit is a shareholders' bill, brought to remove the directors and officers of defendant corporation upon the alleged ground of mismanagement; because primary jurisdiction with respect to such matters is vested in the Board of Insurance Commissioners and not the courts by Chapter 245, Acts 43rd Leg., Reg.Sess., 1933, as amended, and by Chapter 6, p. 401, Acts 46th Leg., Reg.Sess., 1939, as amended, Vernon's Ann. Civ.Stats.1948, Arts. 4859f and 5068—1; and because the plaintiffs have never presented the matters alleged in their petition to said Board of Insurance Commissioners, or attempted to get said Board to remove the directors and officers of defendant corporation or any of them, or attempted to obtain any relief whatsoever from said Board."

Plaintiffs admitted through counsel in open court that they had not complained to the Board of Insurance Commissioners or sought any relief from said Board concerning any of the matters alleged in their petition.

The court sustained said plea and dismissed the suit. The plaintiffs excepted and have appealed.

Plaintiffs' first point is to the effect that in this suit where the Board of Insurance Commissioners has not exercised and is not attempting to exercise powers of conservation or liquidation, the district court has jurisdiction of a policyholder's suit for mismanagement and wrongful act of the officers and directors of the company, and to recover funds wrongfully paid to the president.

The defendant company is a statewide mutual assessment company and is governed by Articles 4859f and 5068—1 of Vernon's Ann.Civ.Stats. Under said articles the duty is placed upon the Board of Insurance Commissioners to regulate such companies and the Board is granted very broad powers in respect thereto. Among some of the powers granted to and duties imposed upon the Board under the various sections of said articles are to issue and revoke certificates of authority to transact business, to audit the books, to approve or disapprove the by-laws and rates charged by said companies, order the removal of any officer, employee or director of the company found to be unworthy of the trust, and to require the election of new officers and directors and to approve the officers and directors elected. The Commissioner of Insurance is given the right to require any officer, agent or employee of the company or association to be sworn and to answer under oath any question regarding the affairs or activities of said association. Section 19 of Art. 5068—1 specifically provides:

"If, upon an examination or at any other time, it appears to the Board of Insurance Commissioners that such association be insolvent, or its condition be, in the opinion of the Board, such as to render the continuance of its business hazardous to the public, or to holders of its certificates, or if such association appears to have exceeded its powers or failed to comply with the law, then the Board shall notify the association of its determination and said association shall have thirty (30) days under the supervision of the Board within which to comply with the requirements of the Board; and in the event of its failure

to so comply within such time, the Board, acting for itself, or through a conservator appointed by the Life Insurance Commissioner for that purpose, shall immediately take charge of such association, and all of the property and effects thereof. If the Board is satisfied that such association can best serve its policyholders and the public through its continued operation by the conservator under the direction of said Board, pending the election of new Directors and officers by the membership in such manner as the Board may determine, the same shall be done. If the Board, however, is satisfied that such association is not in condition to satisfactorily continue business in the interest of its policyholders under the conservator as above provided, the Board shall proceed to reinsure the outstanding liabilities in some solvent association or company, authorized to transact business in this State, or the Board shall proceed through such conservator, to liquidate such association, or the Board may give notice to the Attorney General as provided under the general laws relating to insurance corporations. It shall be in the discretion of the Board to determine whether or not it will operate the association through a conservator, as provided above, or proceed to liquidate the association, as herein provided, or report it to the Attorney General."

■ In respect to the primary jurisdiction of administrative boards, Vol. 42 Am.Jur., pp. 698–699, states the rule to be: "The doctrine of primary jurisdiction is that the courts cannot or will not determine a controversy involving a question which is within the jurisdiction of an administrative tribunal prior to the decision of that question by the administrative tribunal, where the question demands the exercise of sound administrative discretion requiring the special knowledge, experience and services of the administrative tribunal to determine technical and intricate matters of fact, and a uniformity of ruling is essential to comply with the purposes of the regulatory statute administered. The principle is derived from a consideration of the nature of the question and of the inquiry and the action required for its solution."

1 Vom Baur, Federal Administrative Law, pp. 191–192, says: "Administrative questions, which are ordinarily questions of fact, matters which call for the technical knowledge of an administrative agency, must first be determined by the agency before judicial relief can be sought. This primary jurisdiction is exclusive. A court does not have jurisdiction to determine administrative questions, or to adjudicate controversies involving them until they have been determined by the appropriate administrative agency. This is the primary jurisdiction doctrine. Where the court has no jurisdiction under the doctrine it may not acquire it by consent of the parties."

51 Harvard Law Rev., pp. 1251–1252, states: "Keystone of the arch of administrative regulation is the 'primary jurisdiction' rule. With its requirement that controversies calling for administrative discretion be determined by commissions rather than by courts, following from the formula that these questions are primarily within the jurisdiction of the administrative commission charged with that particular field of regulation, the doctrine of primary jurisdiction has pervaded the entire realm of administrative law. Railroad regulation developed the doctrine, public utility regulation expanded it, tax litigation extended it, and now the rapidly enlarging fields of labor and industrial regulation have adopted it."

In Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, the oil company sued the railroad company alleging the railroad company had demanded and collected excessive rates in the shipment of cottonseed. The court held that the primary jurisdiction was in the Interstate Commerce Commission.

In 28 Texas Law Rev., pp. 400, 402, discussing the primary jurisdiction rule, in which the Cotton Oil Company case is discussed, it is stated:

"The doctrine of primary jurisdiction, or preliminary resort, or prior resort, or exclusive administrative jurisdiction, is sometimes confused with, but is clearly distinguishable from the doctrines of exhaus-

tion and ripeness. Those doctrines determine at what stage a party may secure review or administrative action. Primary jurisdiction is a principle which determines whether the court or the agency should make the initial decision. Questions of exhaustion and ripeness may arise whenever judicial review of administrative action is available. Questions of primary jurisdiction arise only when the statutory arrangements are such that administrative and judicial jurisdiction are concurrent for the initial decision of some questions. * * *

"Although the scope of the Abilene opinion was very broad, subsequent cases have limited the primary jurisdiction doctrine to questions of 'fact' and questions requiring the skills of administrative specialists. Questions of 'law' may appropriately be determined in the first instance by courts, because uniformity may be secured through review by a single Supreme Court, but the unifying influence of that court can reach neither factual determination nor the exercise of specialized judgment."

For other cases discussing the primary jurisdiction rule, see: State v. Robinson, Tex.Civ.App., 42 S.W.2d 457; State ex rel. Bettman v. Court of Common Pleas, 124 Ohio St. 269, 178 N.E. 258, 78 A.L.R. 1079; Ulmer v. Falmouth Loan & Building Ass'n, 93 Me. 302, 45 A. 32; State ex rel. Boynton v. Kansas Life Ins. Co., 140 Kan. 267, 36 P.2d 88; Morris v. Liberty Life Ins. Co., 154 Kan. 152, 115 P.2d 773; and Swan v. Mutual Reserve Fund Life Ass'n, 155 N.Y. 9, 49 N.E. 258.

■ The Legislature, recognizing the importance of the close relation to the welfare of insurance companies, the policyholders and the public, created the Board of Insurance Commissioners, and has given to said Board general supervision over said companies, with the authority and duty to control and regulate them for the protection of the best interests of the policyholders and the public in general. Under the present law the Board of Insurance Commissioners is clothed with ample authority to grant to the plaintiffs all of the relief which they seek, and with its actuaries, auditors and other experts possessed of technical knowledge, it is eminently quali-

fied to determine the issues herein involved. If their allegations are true, the Board can require the removal of the officers and directors guilty of the offenses charged, it can require the election of new officers and directors, it can make any and all lawful demands upon its officers and directors. After investigation, if it is found that funds have been wrongfuly expended, it can demand their return or it can demand that suit be instituted for their recovery; and if any of these demands are not complied with within thirty days, the Board has the power to take charge of said company, acting for itself or through a conservator appointed by said Board. If the Board be satisfied that the association can best serve its policyholders and the public through its continued operation by the conservator, under the direction of said Board, pending the election of new directors and officers by the membership in such manner as the Board may determine, the same shall be done. However, if the Board is not so satisfied, it is required to reinsure its outstanding liabilities in some solvent association or company, or through its conservator, liquidate it; or the Board may notify the Attorney General, as provided under the general laws relating to insurance corporations. The law presumes that public officials will perform their duty diligently, fairly and efficiently to all concerned.

■ We are of the opinion that under the public policy of this state, an administrative board such as the Board of Insurance Commissioners, with all of its power to regulate and control mutual assessment companies and the duty imposed upon it to do so, and especially where it is authorized to give all the relief sought, is vested with primary jurisdiction in suits of this character; that is, that plaintiffs should first apply to the Board for relief before seeking redress in the courts. Therefore, we hold that the trial court did not commit error in sustaining the defendants' plea to the jurisdiction.

The judgment of the trial court is affirmed.

Associate Justice TIREY took no part in the consideration and disposition of this appeal.