**Cora ZIMMERMAN, Appellant,**

v.

**TEXACO, INC., et al., Appellees.**

**No. 5775.**

Court of Civil Appeals of Texas.

El Paso.

Nov. 23, 1966.

Rehearing Denied Dec. 21, 1966.

F. H. Pannill, W. B. Browder, Jr., W. N. Sands, Horace N. Burton, Jack T. Akin, John W. Marlow, J. D. Moon, Midland, Ross Madole, Donald G. Canuteson and Edwin A. Collier, Dallas, for appellees.

OPINION

CLAYTON, Justice.

This is an oil drainage case. Cora Zimmerman, the appellant, filed suit in the District Court of Gaines County, Texas, against appellees Texaco, Inc. and Sinclair Oil and Gas Co., Tenneco Oil Company, Socony Mobil Oil Co., Inc. and The Atlantic Refining Co. Appellant alleges that she owns an unleased, undivided $\frac{1}{12}$th mineral interest in a tract on which Texaco, Inc. owns the remaining leasehold interests (J. H. Syler Lease) and had drilled and operated 16 wells under its leases which cover the other $\frac{11}{12}$ths mineral interests, but without any operating agreement with appellant. The fields involved are in Gaines County, Texas, referred to as the Robertson Field, covering the Upper Clearfork Formation and the Robertson North (Clearfork 7100') Field covering the Lower Clearfork Formation. Appellant alleged that the other appellees operated wells on tracts adjoining the tract in which she owned an interest.

Appellant alleges that while operating under the Syler Lease Texaco, in January, 1962, began to test its wells on the schedule daily allowable basis, whereas it knew, from working interests with the other operators, or otherwise, that all these operators were testing on the calendar-day allowable, thus producing on top allowables and due to their methods of operating, were draining oil from under the J. H. Syler leased lands, and consequently draining oil from under the land in which appellant owns her interest. She figured that the drainage from her interest in the year 1962 amounted to 1,853 barrels, and for the first six months of 1963 the amount was 1,225 barrels, a total of 3,078 barrels, of the value of

Sanders, Masters & Watson and H. W. Sanders, Wichita Falls, for appellant.

$9,234.00 for the Upper Clearfork Formation alone. From the Lower Clearfork Formation, during the same eighteen month period, drainage from her interest was calculated by her at 3,613 barrels of the market value of $10,839.00. Appellant further alleges that from July, 1963 to January, 1964 she was damaged by drainage at the rate of $513.00 per month from the Upper Clearfork, and $602.17 per month from the Lower Clearfork Formation.

Prior to the filing by appellant of this suit, the Railroad Commission of Texas, after requests by appellant, and on its own motion, held a hearing on the matter of standardization of well testing requirements and allowable assignments for all wells in the Robertson and Robertson North (Clearfork, 7100′) Fields, at which hearing appellant and all appellees were represented. The Commission found that testing procedures and manner of reporting utilized by the operators varied, and that such test results, coupled with Commission practice in allowable assignments to limited capacity wells, had caused inequities in allowed production to exist among the several producing properties, but did not find any of appellees guilty of any illegal or over-production. The Commission then ordered, effective December 13, 1963, that "The individual wells completed in the Robertson North (Clearfork 7100′) Fields, Gaines County, Texas shall be periodically subjected to gas-oil ratio tests, and other production tests that will demonstrate the ability of each of such wells to produce oil, provided that it shall not be required that a well either be tested at the schedule allowable rate, nor that a certification be made that such a well can produce at the schedule allowable rate for any such well to be entitled to produce its allowable as fixed by the applicable field rules and the general statewide market demand order * * *" and, "That this cause be held open on the docket for such other and further orders as may be necessary." No appeal was taken from this order.

Involved in this suit, as set out in appellant's First Amended Original Petition, are damages by drainage of land in which appellant had her interest prior to the Railroad Commission's order of December 13, 1963, for which it is claimed that the appellees other than Texaco are liable, and appellant claims that Texaco also is liable, because "the drainage was caused either by the negligence of Defendant Texaco Inc. or by its choosing to deliberately ignore the drainage in order to harm Plaintiff." In addition to actual damages, exemplary damages are prayed for.

In the second count of appellant's First Amended Original Petition, on which trial was had, appellant alleged in the alternative as follows:

*"Second Count*

"In the alternative, this Plaintiff alleges that in the event it is found that Defendants did not overproduce their leases and thus drain the Syler Lease, then, and only in that event, this Plaintiff alleges that Texaco Inc., Defendant herein, did not operate the J. H. Syler Lease in a reasonable and prudent manner commencing January 1, 1962, and continuing to January 1, 1964, for the reason that it produced its wells on schedule daily allowable tests while its neighbors were producing their wells on the calendar-day allowable tests; and Defendant Texaco Inc. took no action to restrain the offset operators from producing on the calendar-day allowable. Such action on the part of Texaco Inc. resulted in the drainage alleged in paragraphs Nos. 16 and 17 above, which are incorporated herein by reference.

"25.

"Plaintiff further alleges in this Court that Defendant Texaco Inc. deliberately operated the J. H. Syler Lease in such manner as to deprive this Plaintiff of her fair share of the production in and under the lands covered by said lease and from the two reservoirs above alleged

maliciously and wantonly and for the purpose of depriving this Plaintiff of the oil and gas in and under her said land and also for the further purpose of forcing her to either lease her undivided 1/12 interest to Texaco Inc. or to sign an operating agreement or to sell her interest. This Plaintiff further alleges that Texaco Inc. has practiced upon her the oldest, most time worn, and most despicable fraud known to the oil industry which is charging this Plaintiff excessive costs in equipping and operating the lease and deliberately cutting down her production in order to 'squeeze her out' and make her sell her interest at a low price.

"This Plaintiff alleges that such action on the part of the Defendant Texaco Inc. was calculated and deliberate and continuing. WHEREFORE, This Plaintiff alleges that she should be awarded $100,000.00 exemplary damages against Texaco Inc."

Appellant ended with the following prayer:

"WHEREFORE, Premises considered, this Plaintiff prays that in the event, and only in the event, that the Court finds that the Defendants under First Count are not liable to Plaintiff, that Plaintiff on final hearing hereof recover of and from Texaco Inc. a judgment in the amount of $20,073.00 drainage for the period of time from January 1, 1962, to July 1, 1963, and the sum of $1,115.17 per month drainage from July 1, 1963, to January 1, 1964, plus $100,000.00 exemplary damages, costs of suit, and such other and further relief, in law or in equity, to which Plaintiff may show herself justly entitled."

Each of the appellees filed similar Pleas in Abatement claiming that appellant had not exhausted her remedy before the Railroad Commission and the suit should therefore be abated until the remedy before the Railroad Commission be exhausted. These Pleas in Abatement and all Special Exceptions filed by appellees were overruled.

The appellees then each filed motion for Summary Judgment, after which appellant filed her First Amended Original Petition, in which she omitted any and all allegations as to the existence of a conspiracy, and attention must be directed to this fact along with the matters set forth in this opinion that deal with the second count of her amended petition, which is concerned with Texaco, Inc. only. As will appear from said petition, her first count remains the same with the exception of having dropped the conspiracy charge. In this count she seeks to recover damages against appellees, jointly and severally, for alleged wrongful drainage of oil during the years 1962 and 1963, and for exemplary damages. The trial court granted these Summary Judgment motions, reciting in his order:

"It is therefore ORDERED, ADJUDGED and DECREED that the motions for summary judgment filed herein by the defendants, Texaco Inc., Tenneco Oil Company, Sinclair Oil & Gas Company, Socony Mobil Oil Company, Inc., and The Atlantic Refining Company, be, and they are hereby, each granted and sustained and that judgment be, and the same is hereby rendered for the defendants and against the plaintiff, that plaintiff's suit be dismissed with prejudice for want of jurisdiction and that plaintiff take nothing by her suit against the defendants, and that all costs in this behalf expended be adjudged against the plaintiff, for which let execution issue."

This order of the trial court is attacked by appellant under six points of error, as follows:

*"POINT ONE*

"The Court erred in finding that it had no jurisdiction and in granting summary judgment of dismissal for want of jurisdiction.

*"POINT TWO*

"The Court erred in holding that it had no jurisdiction under Motions for Sum-

mary Judgment, when it had already decided that same issue in response to Pleas in Abatement.

### "POINT THREE

"The Court erred in finding that there was no genuine issue of material fact under First Count of Plaintiff's First Amended Original Petition and in granting Summary Judgment thereon for the Defendants.

### "POINT FOUR

"The Court erred in finding that there was no genuine issue of material fact under Second Count of Plaintiff's First Amended Original Petition and in granting Summary Judgment thereon for the Defendant.

### "POINT FIVE

"The Court erred in dismissing Plaintiff's suit with prejudice.

### "POINT SIX

"The Court erred in entering a 'take nothing' judgment against Plaintiff."

We come now to the consideration of the court's decision or holding. Appellees earnestly argue the consideration that the court's judgment was correct because it was obvious that the District Court of Gaines County had no jurisdiction in this matter. It is apparent from the record that appellant's complaint against the appellees (having dropped her conspiracy charge) consists of her allegations that the appellees, who operated abutting or adjoining oil properties or leases, had over-produced their properties. She contends that this point is made by claiming that the appellees had secured higher allowables; or, in other words, had been given permission by the Railroad Commission to produce more oil than they should have; that said Commission granted these allegedly excessive allowables because of testing records and information submitted by the appellees. In other words, this is a dispute or comparison of what is called the "calendar-day allow-

able" test versus the "schedule daily allowable" test. She seeks money judgments from the appellees, alleging that they secured improper and excessive allowables because of their methods of testing the production of their wells. After correspondence and communications between appellant, her agents, and attorneys, with the Railroad Commission, the Commission, on its own order, set down a hearing in August of 1963. In her communication with the Railroad Commission appellant charges that there are different methods of testing wells in the fields herein involved, and that such resulted in unequal or inequitable allowables granted to the various producers. She asked the Commission to standardize the method of testing. After hearing the parties involved in August of 1963, the Railroad Commission handed down its order of December 13, 1963 which states that the Commission found that testing procedures and the reporting of same utilized by the operators in the field varied, and that such, coupled with the Commission practice with reference to limited capacity wells, have caused inequities in allowed production to exist among the several producing properties in the field, and that a uniform standardized testing procedure was needed. However, it must be noted that in this order, which goes on then to outline the procedure, it was not found, and in fact there is no allegation made, that any of the appellees had violated any order or regulation of the Commission, and such order did not find or even discuss the possibility that any of the appellees had done anything illegal or unlawful, the order merely standardizing the method of testing and the certification of the results from said tests so that an equity of allowables would be accomplished.

 It is elementary that the Railroad Commission of Texas, a body created by legislative action, is the one endowed with primary authority to regulate the production of oil and gas in the State of Texas for the purpose of conservation and regularity; and so it is to this Commission that

the oil companies must go to have the allowables of their wells set and determined. In order to accomplish this, the operators or producers send in information applicable thereto on documents described as Form GO–2. From information received, the Commission then makes, sets and continues to adjust orders and allowables as needed. This is the duty and obligation of the Commission as provided by the Legislature. The Legislature also provided that orders dealing with the production allowables of gas and oil as made by the Commission can be attacked directly only in a district court of competent jurisdiction in Travis County, Texas. Here, the suit was filed in Gaines County, Texas and accuses the appellees of over-production by virtue of having secured an improper and/or excessive allowable from the Railroad Commission. We do not believe the District Court of Gaines County had jurisdiction to pass on this matter. There are cases where the parties can bring their suits in matters similar to this in counties other than Travis County, but this is where they have charged a violation of an order or regulation of the Commission, committed a common law tort such as trespass, etc., or some affirmative act of negligence, against another producer, or have drilled or are attempting to drill or produce oil or gas without any permit or regulation from the Commission. Such is not the case here. Comanche Duke Oil Co. v. Texas Pac. Coal & Oil Co., 298 S.W. 554 (Tex.Com.App., 1927) ; Gregg v. Delhi-Taylor Oil Corp., 162 Tex. 26, 344 S.W.2d 411 (1961) ; 42 Am. Jur. 698, § 254; 73 C.J.S. Public Administrative Bodies and Procedure § 40, p. 347; Kavanaugh v. Underwriters Life Ins. Co., Tex.Civ.App., 231 S.W.2d 753 (err. ref., 1950) ; Railroad Comm. v. Gulf Production Co., 134 Tex. 122, 132 S.W.2d 254 (1939) ; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 87 S.W. 2d 1069, 99 A.L.R. 1107, 101 A.L.R. 1393 (1935) ; Corzelius v. Harrell, 143 Tex. 509, 186 S.W.2d 961.

The above cases discuss the powers and duties of the Railroad Commission and of similar bodies, and the exceptions thereto which permit a suit for damages arising out of common law tort, and/or the violation of a Railroad Commission rule, and/or the drilling of a well, or production of oil or gas without any permit from the Railroad Commission. From the above, it seems clear that the trial court was correct in holding that he had no jurisdiction to hear this matter.

■ Secondly, it is our belief that appellant's cause of action constitutes a collateral attack on orders or regulations of the Railroad Commission. This procedure is not permissible and is another reason why the trial court was correct in holding that he did not have jurisdiction, that there were no material matters of fact in issue, and that judgment should be granted in favor of appellees. The matter of a collateral attack on an order by the Commission is discussed in 43 Tex.Jur.2d, Oil and Gas, § 658, pp. 593–594, and is thoroughly discussed in an article found in 33 Texas Law Review 680, 682.

■ For these reasons we hold that the judgment of the trial court was correct. We also hold that the adjoining appellees named in the First Count had not been guilty of any wrongs or crimes, but had tested and produced under methods acceptable and allowed until the order of December 13, 1963. Appellant here asks for damages occurring prior to the year 1964.

■ Also, we believe the trial court was correct in awarding a "take-nothing" judgment because appellant had asked for varying items of damage for which she asked specific sums. Not being entitled to such damages, a take-nothing judgment was therefore proper.

■■ Appellant also attacks the wording of the order of the trial court wherein he states that the suit is dismissed "with

prejudice". Such an order is, of course, usually a determination of the merits of the lawsuit, rather than a plain dismissal; but we think it proper here because the court, in effect, is saying that, based on the matters presented to him, this matter cannot be tried in his court for jurisdictional reasons; and even if it could, appellant has not shown herself to be entitled to any damages.

Appellee Texaco Inc. is the only appellee affected by the second count of appellant's petition. We do not think appellant has shown any liability in her favor on the part of Texaco, and again we believe and find that the decision of the trial court was correct. First, in her petition the appellant states that in the event it is found that the various appellees (defendants) did not over-produce their leases abutting and adjoining hers, as alleged in the First Count, and thus drain the Syler Lease (the property with which appellant is concerned), then and only in that event does plaintiff allege that Texaco Inc. is liable for improper operation of the said Syler Lease. We could, perhaps, stop with that assertion, but we will discuss other defenses enumerated by Texaco.

First of all, it is obvious that Texaco and appellant are co-tenants of the Syler property by virtue of the fact that appellant owns a ⅟₁₂th part of the mineral interest, and Texaco has the other ¹¹⁄₁₂ths under lease. Appellant urges that Texaco permitted some of the oil on the Syler Lease to be drained off by the abutting or adjoining owners. There is no controversy here about the interests owned by Texaco and appellant. Also, there is no proof or allegation that there was any agreement, covenant or contract between Texaco and appellant with reference to the operation of the Syler property. There was no lessor-lessee relationship or any other contractual relationship between the parties, and none can be implied from the record. Therefore, the parties stood in the relationship of co-tenant, each with the other. The law is clear that one co-tenant does not have an affirmative duty to drill and produce for the benefit of the other co-tenant. Although appellant urges and seeks to impose some affirmative duty on Texaco to prevent the alleged drainage and to ask for proper standardization of testing methods, the law does not so require. Appellant had the same privileges and rights and, as this record shows, did exercise them by appealing to and getting from the Railroad Commission an order calling for standardization of testing methods and information. Then, too, there exists no fiduciary or agency relationship between co-tenants or tenants in common, in the absence of agreement or contract so providing. Therefore, regardless of what appellant claims and urges in her petition, Texaco was not only not obligated, but actually had no right or authority to represent her before the Commission. There are many cases dealing with and outlining the rights of co-tenants in oil, gas and mineral properties, and the following are cited: Burnham v. Hardy Oil Company, Tex. Civ.App., 147 S.W. 330, (aff'd. 108 Tex. 555, 195 S.W. 1139); Willson v. Superior Oil Company, Tex.Civ.App., 274 S.W.2d 947 (n.r.e.); White v. Smyth, 147 Tex. 272, 214 S.W.2d 967, 5 A.L.R.2d 1348.

As stated in the Willson case, supra, each owner in a co-tenancy acts for himself, and no one is the agent for the other, neither having any authority to bind the other unless authorized to do so.

Also, it should be noted at this point that we have not found, nor does the record disclose, any evidence of improper or unlawful testing or production on the part of the appellees who own and operate adjoining property; so under the Texas law of "right of capture", the oil they produced was under a specified allowable granted by the Railroad Commission, and they were entitled to it. If there was over-production in the manner stated by appellant resulting in the drainage from appellant's property, it was and could only

have been corrected as the Commission did in its order of December, 1963.

With respect to the holding of the court that there were no material matters of fact presented or in contest, it should now be obvious that this holding was correct, as the disputes alleged by appellant to exist between her and the various appellees involved jurisdiction of the court, and rights and duties of co-tenants, and all are based on matters of law or legal construction of actions by the various appellees and/or the Railroad Commission.

We will not take up the many cases cited by appellant individually, but it appears to us that these cases are not decisive or in point, as they appear to deal with tort problems and/or violations, none of which conditions prevail in the matter before us.

 There is one last matter that we think should be briefly discussed, and that is appellant's complaint that the wells of appellees on adjoining properties, although reported as being capable of making their schedule daily allowables, did not have adequate equipment to *produce* that much oil. We do not find any merit in this contention because, as we have set forth above, all appellees admittedly sent in their GO–2 forms containing information as to the testing of their wells. The record shows that all of the allowables granted by the Railroad Commission were well below the capable or potential production of the wells, and it would have been useless and expensive to install equipment competent to extract the maximum allowable. This situation comes about because of the practice of the Railroad Commission in making allowable assignments to "limited capacity wells". There is no fact dispute with regard to this matter either. This situation, as stated, comes about by virtue of the Railroad Commission's attempts to prevent inequities. In other words, it might well be that a well had an allowable (as stated in Texaco's brief) of 90 barrels daily assigned to it by the Railroad Commission's Semi-annual

Proration Schedule, but due to what is called the "market demand factor", the well was actually limited to 28.5% of its monthly allowable. This percentage, of course, varies somewhat from month to month. This is what is known as a limited capacity well. Therefore, it would be useless and expensive to install equipment capable of producing 90 barrels a day, which was the set allowable, when, as a matter of fact, under the Railroad Commission's regulations, the well could be permitted to produce only 28.5 per cent of its monthly allowable, and this, of course, could be done with smaller and less expensive equipment.

On the basis of the above reasons and authorities, we hold that the trial court was also correct in its judgment as it affects Texaco Inc., and of course it will be noted from the record that appellant was claiming money damages from Texaco. Since the same problems of non-liability and lack of jurisdiction existed as to the other appellees, the "with prejudice" and "take-nothing" features of the court's judgment are, in our opinion, properly included.

Appellant's points are all overruled and the decision of the trial court is in all things affirmed.

PRESLAR, Justice (concurring).

I concur in the affirmance of the trial court judgment, but cannot agree with the majority holding that the District Court of Gaines County had no jurisdiction to pass on the matter. Briefly, my position is that this is a suit for money damages which does not seek to alter or challenge the validity of an order of the Railroad Commission of Texas.

Article 6049c, section 8, Vernon's Ann. Tex.Civ.St., provides, in part, that any person aggrieved " * * * by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall have the right to file a suit in a Court of competent jurisdiction in Travis County, Texas, and not

elsewhere, against the Commission, or the members thereof, as defendants, to test the validity of said laws, rules, regulations or orders." This does not make the Commission a court nor give it powers and jurisdiction to determine a suit for damages by one party against another for taking his oil or against his cotenant for not producing enough of it for him.

The gravamen of appellant's suit in the District Court of Gaines County is that during the period of time covered by her complaint, two different methods of testing for determining allowables were permitted by the Commission; her co-tenant, Texaco, used one method, and the adjoining producers used the other, and the method used by the adjoining producers resulted in larger allowables to them. This, she says, resulted in drainage from her properties, for which they owe her the money value; or, if the court finds she cannot recover from them, then she should recover from Texaco for not producing as much as the adjoining producers. It is not contended that the oil was produced illegally. Indeed, she could not make that contention without being in the position of complaining that Texaco should also have operated illegally for her benefit. The orders of the Railroad Commission providing for the methods of testing are not attacked; in fact, no complaint of any nature is lodged against any Commission order or regulation. All complaints are of the acts of the appellees, and appellees' only connection with the Railroad Commission is that they operate under and are regulated by it. Stripped of its descriptive wording, the nearest thing to a violation of a Commission regulation alleged in appellant's petition is that the appellees reported to the Commission that their wells were capable of producing greater amounts of oil than they were, in fact, equipped to produce. That, as explained by the majority opinion, was a proper response to the Commission's inquiry as to the wells' potentials. Whether it was, or was not, a proper response or compliance with the Commission regulation

was a question to be determined by the court, even as this court determined it. It was made the basis of a claim for money damages, one party against another. Only a court could pass on it. I am convinced that there are no issues in this case, however determined, which would alter or invalidate any order of the Texas Railroad Commission, and that the issues here presented are not exclusively within the jurisdiction of the Railroad Commission or the District Court of Travis County. Jurisdiction deals with the power of a court to determine an action involving a particular subject matter as between the parties, and to render judgment. The District Court of Gaines County had that power in this case, unless the above-quoted provision of Article 6049c took that power away. As I view the case, it did not, and the court had jurisdiction to render the judgment, and was correct in its rendition. The conclusions here reached on the question of jurisdiction are supported by the case of Woods Exploration & Production Company v. Aluminum Company of America, Tex.Civ. App., 382 S.W.2d 343 (err. ref., n.r.e.) and authorities there cited.